1 Name: BRENT BATEMAN
2 Address: 5207 BEEMAN AVENUE
3 VALLEY VILLAGE, CALIFORNIA 91607
4 Phone: 310.210.2858
5 Fax: N/A
6 In Pro Per

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

BRENT BATEMAN

Plaintiff

v.

Associated Press, Time Warner, News Corp, Viacom, Inc.
NBC Universal, Walt Disney Compay, Comcast, CCC,

Defendant(s).

CASE NUMBER:
**CV12·9291**
To be supplied by the Clerk of
The United States District Court

COMPLAINT
JURY TRIAL DEMANDED

Plaintiff BRENT BATEMAN, doing business as film distribution firm, RACE FOR THE TRUTH, through legal Pro Per, alleges the following:

### NATURE/CAUSES OF ACTIONS

1. The Associated Press, (AP), a legal non-profit "cooperative," along with all other said listed Defendants, et. al, are in direct and blaring violation of the RICO Act of 1964, specifically related to multiple sections that include: sections 471, 472, and 473 relating to counterfeiting, section 1343 related to their direct violation of wire fraud, section 1426 related to reproduction of naturalization or citizenship papers, section 1951 related to inference to commerce and extortion. The Associated Press, by and through its non-profit status with the Internal Revenue Service, is bound by federal tax law to maintain its mission statement objectives or suffer losing its unique

and special classification under the Internal Revenue Service as a non-profit entity.

2. The Associated Press, along with its members listed in this complaint, et al, have a vested interest and combine ownership of more than 92% of all news, entertainment, and world media in the United States. In addition, the Associated Press admits in its own active complaint filed in Press v. Meltwater, that Pew Research Center's Project for Excellence in Journalism found that "much" of the "news" people receive contains no original reporting.

The active AP lawsuit against Meltwater affirms that 95% of all news stories in the United States are delivered by the mainstream United States media, via said listed defendants, through the Associated Press monopolistic business practices, which led the United States to find the 'so-called' non-profit AP guilty in 1945 of violating the Sherman Anti-Trust Act, specifically to control a near monopoly on the news and entertainment industries, and financial release and information via Sections 1 and 2 of the Sherman Act, specifically the 'concerted' activities (agreements) with all listed defendants, to mislead 100% of AP's subscribes, their members, and their audience: the world pubic at large.

In the Associated Press v. United States, 1945, the United States Supreme Court held that because the Associated Press has not held a monopoly, and was,(as is today), irrelevant to their continuing violations of this act established to protect the market place from suffering any kind of business, social, or economical monopoly over the jurisdiction of the United States by choice or force and not by nature or chance, or simply because there is no other competitor in the marketplace.

The United States Supreme Court also held in Associated Press v. United States, 1945, that through the release of its information, news, entertainment, and financial news gathering services and membership based products, the Associated Press and its trade, is carried out among the states and categorized it as interstate commerce. Most importantly, the Supreme Court decision in 1945 held that simply because the Associated Press, via its membership and its 92% share of the entire media,

-2-

news, financial, and entertainment industries releases, the AP and its members media control, does not qualify them any circumvention of the Sherman Act simply because the Associated Press is a 'non-profit' 'cooperative, the Supreme Court held, and could not render the the Sherman Act inapplicable.  The Associated Press, along with 100% of its members, including all listed Defendants in said complaint, along with, inadvertently, all paying subscribers to the Associated Press products and services from all over the United States and the world, have engaged in a conspiracy to commit fraud by virtue of the 'rule of reason' clause defined in the Clayton Anti Trust Act of 1914, specifically relating to the massive news and entertainment mergers and acquisitions, as well as the Federal Communication Commission's rulings that news, entertainment, radio, television, and internet business and entities can 'gobble up' and now currently control nearly 95% of all releases through these media mediums an their related industries.  Although the Associated Press can claim no vested interest in any of these mergers and acquisitions, that is simply not the case, as per the Clayton Anti Trust Act of 1914, again specifically relating to 'exclusive dealing agreements,' which the Associated Press has with each member, as well as different pay schedules and pay fees for any and all paying subscribers, via different arrangements and legal agreements, as openly admitted in current active litigation in Associated Press v. Meltwater.

In Associated Press v. Meltwater, the AP admits they use different scales and different fees for different clients and different subscribers.

3.     As the Associated Press is a news and aggregate news, entertainment, financial, and world news leader in the field of news gathering and 'so-called' journalism, and its duty as per its Internal Revenue Service awarded non-profit certificate, the Associated Press must serve the best interest of the public, which includes the authenticity of any and all documents, whether verbal,

-3-

audio, photographic, still or moving, film, motion pictures, or live news, to present a fair, balanced, and objective view from both sides of each individual story amassed, collected, written, edited, submitted, and released over the Associated Press wires, via their membership services, but their subscription-based products and services, whether in whole, or a la carte, is in blaring violation of the Internal Revenue Service's specific clause that violates the AP's ability to carry out its intended mission. The Associated Press, in its mission statement of facts, boasts that each story must be researched, investigated, and thoroughly "vetted" as told to Plaintiff, BRENT BATEMAN, via 17 different Associated News reporters, including seven 'so-called' AP 'Bureau Chiefs.'

4.     On September 14th, Plaintiff BRENT BATEMAN, via his Production Company, Los Angeles based Quad City Pictures, sent out a Press Release to more than 400 United States media outlets, with nearly all 400 of them being charter members of the Associated Press, many of whom own and control, in full or partially, in mergers and other legal structures, nearly 95% of news, entertainment, financial, and world news released to the pubic in the Untied States and around the world. Plaintiff announced through press release the theatrical release of feature documentary film, FRAUD, chronicling 2008 Presidential election fraud, the Barack Hussein Obama birth certificate fraud, forgery, cover-up, and the counterfeiting by the Associated Press, via its paying subscribers, and 100% of its members of said documents, including a fake Osama Bin Laden death hoax photo, released by the Associated Press and redacted within a few days. Plaintiff BRENT BATEMAN, after receiving more than 25 death threats via his film production companies web site, Quad City Pictures, and more recently, a phone call to a private line at his Los Angeles area home, the caller had threatened to cut his head off and blow-up (with a bomb) the Houston, Texas theater premie of the FRAUD film, called the North Hollywood P.D., along with the Houston Police P.D., and the Federal Bureau of Investigation, who then engaged in an ongoing investigation to said death threat claims.

After seeking to purchase two, :30 second film commercial spots with NBC in Houston, Texas,

-4-

NBC Houston, waited three days, and on September 14, 2012, NBC Houston, an Associated Press charter member, refused to air said trailers stating that although the film's motion picture rating was only PG-13, "NBC does not air that 'type' of material," virtually censoring protected free speech under the United States Constitution, the Supreme Law of the United States of America.

5.   Plaintiff BRENT BATEMAN, via his film distribution company. released feature length documentary film, FRAUD, a political expose' revealing several crimes of treason and high crimes against the states, the people, and the world, on October 19, 2012 via Regal Theaters, the largest theater chain in the United States, who gave film distribution firm RACE FOR THE TRUTH, rights to distribute its feature documentary film, FRAUD, in selected chosen theaters in Presidential election toss-up states to attract the desired demographic in making the film a success at the box office.

Regal Theaters was initially apprehensive about releasing the controversial documentary film, and their executives decided the censorship of the film's trailers could hinder the box off receipts as well.

On October 19, 2012, Plaintiff BRENT BATEMAN, via, RACE FOR THE TRUTH, his newly created film distribution firm as of October 16th, 2012, released FRAUD feature film, into five cities (Las Vegas NV, Knoxville TN, Fairfax VA, Columbus OH, and Houston TX)

Bateman's release of FRAUD, earned him the title of the first person in world history to bring a film to the big screen as a "One-Man Band," essentially writing, editing, shooting, interviewing, negotiating, and setting up newly created distribution firm, RACE FOR THE TRUTH, via Bateman's Production Company, Quad City Pictures, completely solo and alone.

In addition, Plaintiff BATEMAN and his distribution firm, RACE FOR THE TRUTH, made cinematic film history the same day for being the fist person and distribution firm to bring a feature film to the big screen in less than five days.  This feat, along with Bateman's "One-Man Band" film

-5-

achievement was reported to over 1,000 radio personalities, and news and media outlets across the Untied States.  Plaintiff BRENT BATEMAN spent three weeks actively pursuing twenty-six AP reporters and 'Bureau Chief's' from across the United States, to write his story and introduce his film, and his historical achievements.  After speaking to each individual Associated Press reporter via telephony, Plaintiff BRENT BATEMAN, in each instance, was assured that someone at the Associated Press would write his story, due to the ongoing death threats, and the media and network television's blackout of the film's ability to promote itself on television, while the concerted effort to censor Bateman's FRAUD film grew to a boiling point on October 25th, 2012.  On October 23, 2012, four separate Associate Press reporters informed Plaintiff BRENT BATEMAN by telephony that because his film focused on Barack Hussein Obama and his Kenyan birth, the Associated Press would never publish a story about it, because as three Associated Press BEUREAU CHIEF's said to Plaintiff BATEMAN, "We all support President Obama, and we have no interest in your story, and this close to the election, we would never release your story." This was after two weeks of twenty-four AP reporter's promising Bateman a 'follow-up' interview after 'vetting' and investigating his story.

FACTS NOT IN DISPUTE

1.  On April 27, 2012, The Associated Press, via it's members and paid subscribers, released a copy of Barack Hussein Obama's alleged original 1961 birth certificate.  As the Associated Press boasts in it's mission statement, as spoken to Plaintiff regarding the facts surrounding the release of his documentary film FRAUD, but fail to "vett"  the fake, forged, and counterfeit document produced by the White House, and the Barack Hussein Obama administration.

Plaintiff will produce irrefutable proof in discovery that the Associated Press released an altered document to the world different from the White House released document by the Barack Hussein Obama administration, and knowingly and willfully committed felony fraud under the Sherman

-6-

Anti-Trust Act. On or about May 1, 2012, the Associated released a fake, forgery, and fraudulent photo of an alleged "dead Osama Bin Laden," to its thousands of members and subscribers around the world. It was not until the next day that the Associated Press admitted they had released a fake and altered photo, causing several individuals in the United States Congress to go "on camera" and "on the record," in the United States House of Representative CHAMBERS and the United States Senate CHAMBERS, and announce they had seen the Osama Bin Laden death photos, and he was "clearly identified," and "clearly dead," causing mass confusion and fear around the world.

Again, with the release of the Osama Bin Laden "fake death photo hoax," perpetrated mostly by the Associated Press, they were forced to REDACT the FAKE and FRAUDULENT photo within hours. The Associated Press has also openly admitted its "relationship with the Obama administration," most recently announcing in the New York Times, a charter member of the Associated Press, that yes, indeed, the White House Staff of the Barack Hussein Obama administration, edits stories that the Associated Press charter member the New York Times, one of the world's most influential news publications and online new services, releases daily to the United States and world public at large.

Plaintiff BRENT BATEMAN, via his film distribution film, RACE FOR THE TRUTH, is seeking damages in excess of one billion dollars from each named and said defendants, et al, and seeks triple damages as per the power and provisions in the Clayton Anti Trust Act of 1914, that continues to be used in court cases in hearing across the country in determining the "treble damages" Plaintiff Brent Bateman is seeking from all defendants included in this filing.

10-30-2012                     *Brent Bateman* (signature)

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☒)

**DEFENDANTS** ASSOCIATED PRESS, TIME WARNER, VIACOM, INC. WALT DISNEY COMPANY, COMCAST, NBC UNIVERSAL, NEW YORK TIMES, CLEAR CHANNEL COMMUNICATION

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
BRENT BATEMAN
5207 BEEMAN AVE.
VALLEY VILLAGE, CA 91607
310-2858

**Attorneys (If Known)**

**II. BASIS OF JURISDICTION** (Place an X in one box only.)
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)
- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify):
- ☐ 6 Multi-District Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☐ No
**MONEY DEMANDED IN COMPLAINT:** $1,000,000,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
RICO ACT - SECTIONS 471, 472, 473, 1426, 1951 - CLAYTON ANTI-TRUST.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☒ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:** Case Number: **CV12-9291**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)      CIVIL COVER SHEET      Page 1 of 2

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES | CALIFORNIA |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| NEW YORK | NEW YORK, TEXAS |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
  **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  |  |

\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _/s/ [signature]_  Date  10-30-2012

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |